Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| LUIS HIRAM QUIÑONES SANTIAGO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202500027 | *REVISIÓN ADMINISTRATIVA* procedente de la División de Remedios Administrativos<br><br>Caso número: GMA 1000-455-24<br><br>Sobre: Solicitud de remedios administrativos |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 31 de marzo de 2025.

Comparece ante nos, por derecho propio, la parte recurrente, Luis H. Quiñones Santiago, mediante un recurso de revisión judicial, y solicita que revisemos la determinación emitida por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación el 18 de noviembre de 2024, notificada el 26 del mismo mes y año. Mediante el referido dictamen la agencia acogió la respuesta del área concernida con relación al acceso del recurrente a un expediente criminal.

Por los fundamentos que expondremos a continuación, se revoca la determinación administrativa recurrida. Veamos.

## I

El 26 de septiembre de 2024, Luis H. Quiñones Santiago (Quiñones Santiago o recurrente) instó una *Solicitud de Remedio Administrativo* ante la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (DCR o recurrido).[1]

---

[1] Anejo 1 del recurso. Véase, además, expediente administrativo, págs. 5 y 7.

En la misma, planteó que le había solicitado a la técnica sociopenal y a la técnica de récord que le dieran acceso a su expediente criminal, pues necesitaba información indispensable para un proceso judicial que pretendía llevar a cabo. Arguyó que había solicitado ver su expediente criminal en varias ocasiones, pero ambas técnicas se habían negado a concederle el acceso solicitado, alegando que no podían mostrarle el expediente. Según adujo, tampoco le habían entregado los documentos de dicho expediente, ni acceso a ver el Informe de la Junta, porque le indicaron que estos pertenecían al DCR. Ante el incumplimiento con el *Manual de Normas y Procedimientos A.C. OA-SS-99, Manejo de Expedientes de la Población Correccional*, el cual proveía para que el miembro de la población, a través de los servicios sociopenales, tuviera acceso a la información en sus expedientes, solicitó que se cumpliera con la reglamentación aplicable.

Evaluado lo anterior, el 18 de noviembre de 2024, notificado el 26 del mismo mes y año, el DCR emitió la determinación que nos ocupa, mediante la cual adjuntó la respuesta del área concernida.[2] En particular, dicha respuesta fue emitida por el comandante de la guardia, quien expresó lo siguiente:

> Luego de verificar en el [á]rea soccial *[sic]* y en el [á]rea de r[é]cord[,] y de acuerdo a lo investigado[,] si usted quiere tener acceso a su expediente criminal[,] deber[á] solicitarlo atraves *[sic]* del tribunal.

En desacuerdo, el 26 de noviembre de 2024, Quiñones Santiago presentó una *Solicitud de Reconsideración*.[3] En síntesis, arguyó que el comandante de la guardia se equivocó en su recomendación, ya que, contrario a lo propuesto por dicho funcionario, la reglamentación del DCR establecía el procedimiento ante la agencia para que se le diera acceso a sus expedientes, por lo

---

[2] Anejo 2 del recurso. Véase, además, expediente administrativo, págs. 8-9.
[3] Anejo 3 del recurso. Véase, además, expediente administrativo, págs. 10-11.

que no tenía que acudir ante el foro judicial a solicitar tal remedio. En virtud de lo anterior, solicitó que se aplicara el *Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados del Departamento de Corrección y Rehabilitación* para que responsabilizaran al referido funcionario por desconocer las normas y reglamentos del DCR, así como por no cumplir cabalmente con sus responsabilidades y funciones.

Atendida la solicitud, el 19 de diciembre de 2024, notificada el 23 del mismo mes y año, el DCR emitió una *Respuesta de Reconsideración al Miembro de la Población Correccional,* mediante la cual modificó la determinación del 18 de noviembre de 2024 y denegó la petición de reconsideración.[4] En la misma, la agencia recurrida expresó lo siguiente:

> Sr[.] Quiñones Santiago, en su Solicitud de Remedio expresó su inter[é]s en que el personal del Área de Sociales y el de Récord cumplan con el Manual de Normas y Procedimientos.

> El caso fue discutido en el Área de Sociales. Es importante que usted tenga conocimiento que el miembro de la población correccional no puede ver el expediente criminal. El acceso a la información del expediente es por conducto del Técnico de Servicios Sociopenales. Se le puede suministrar información del mismo y/o documentos. En la Solicitud de Remedio no hace referencia a documentos específicos que alegadamente no le han proporcionado. Le orientamos a que se reúna con la Técnico de Servicios Sociopenales y así pueda aclarar cualquier inquietud sobre ese o cualquier asunto.

Inconforme con la determinación de la agencia, el 30 de diciembre de 2024, recibido en la Secretaría de este Foro el 13 de enero de 2025, la parte recurrente compareció, por derecho propio, ante nos y realizó los siguientes señalamientos de error:

> Err[ó] el Departamento de Correcci[ó]n y Rehabilitaci[ó]n [al] permitir que el remedio administrativo fuera contestado por el teniente comandante cuando debi[ó] ser contestado por el [á]rea de sociales o r[é]cord[.]

---

[4] Anejo 4 del recurso. Véase, además, expediente administrativo, págs. 14-15.

> Erró el Departamento de Correcci[ó]n y Rehabilitaci[ó]n [al] permitir que el teniente comandante me expresara que ten[í]a que recurri[r] al Tribunal para lo que yo solicitaba[.] [¿A] qu[é] se debe esa conducta y esas expre[s]iones[?] Si la agencia cuenta con el [M]anual de [N]ormas y [P]rocedimientos [...] Asunto: Manejo de Expedientes de la Poblaci[ó]n Correccional.

> Erró el Departamento de Correcci[ó]n y Rehabilitaci[ó]n [al] [s]olicitarme requisitos que no est[á]n contem[p]lados en el [M]anual antes mencionado en violaci[ó]n al mismo [R]eglamento de la agencia.

En cumplimiento con nuestra *Resolución* del 24 de enero de 2025, la parte recurrida compareció mediante *Escrito en Cumplimiento de Resolución* el 26 de febrero del año corriente.

Con el beneficio de la comparecencia de las partes, así como con la copia certificada del expediente administrativo, procedemos a resolver.

**II**

**A**

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70, resuelto el 24 de junio de 2024; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Transporte Sonnell, LLC v. Junta de Subastas de la Autoridad de Carreteras y Transportación de Puerto Rico y otro*, 2024 TSPR 82, resuelto el 24 de julio de 2024;

*Otero Rivera v. Bella Retail Group, Inc. y otros*, supra; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta. Es por ello que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 2024 TSPR 29, 213 DPR ___ (2023).

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Íd.* Véase, además, *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, supra, y *Super Asphalt v. AFI y otro*, supra, pág. 819.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*

Bajo este supuesto, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), estableció "el marco de revisión judicial de las determinaciones de las agencias administrativas".

*Otero Rivera v. Bella Retail Group, Inc. y otros*, supra; *Rolón Martínez v. Supte. Policía,* supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.,* págs. 35-36; *OEG v. Martínez Giraud,* supra; *Torres Rivera v. Policía de PR,* supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores,* supra, pág. 217. Nuestro Máximo Foro ha expresado que esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía,* supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.; OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otro,* supra.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía,* supra, pág. 36; *Torres Rivera v. Policía de PR,* supra, pág. 627. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Íd.*

El Tribunal Supremo de Puerto Rico ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR,* supra, págs. 627-628; *OEG v. Martínez Giraud,* supra.

Finalmente, nuestra más Alta Curia ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud*, supra, pág. 11.

**B**

La Sección 19 del Artículo VI de nuestra Constitución establece que será política pública "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. ELA, LPRA, Tomo I. A raíz de ello, el Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, conocido como el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, 3 LPRA Ap. XVIII (Plan de Reorganización Núm. 2-2011), provee para un sistema de custodia de las personas que han sido encontradas incursas en la comisión de un delito o falta y para que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad. 3 LPRA Ap. XVIII, Art. 2.

A esos fines, el objetivo principal del referido esquema legal es que toda persona recluida en una institución correccional disponga de un organismo administrativo, en primera instancia, ante el cual pueda presentar una solicitud de remedio, con el fin de minimizar las diferencias entre los miembros de la población correccional y el

personal del Departamento de Corrección y Rehabilitación. Además, el referido estatuto tiene como fin el evitar y reducir la presentación de pleitos en los tribunales de instancia. Véase, Introducción del Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583 del 4 de mayo de 2015 (Reglamento Núm. 8583). En particular, la Regla VI del Reglamento Núm. 8583, *supra,* dispone que la División de Remedios Administrativos tendrá jurisdicción para atender toda solicitud de remedio presentada por los miembros de la población correccional, relacionada directa o indirectamente con actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional, entre otras.

Por otro lado, a fines de cumplir con la política pública de la Administración del Departamento de Corrección y Rehabilitación de mantener un sistema de récords eficiente y confiable, así como conservar la seguridad en el manejo y control de la información, el 29 de noviembre de 1999, el mencionado organismo administrativo aprobó el *Manual de Normas y Procedimientos A.C. OA-SS-99, Manejo de Expedientes de la Población Correccional* (Manual), para regular los procedimientos y requisitos a cumplirse relacionados con los expedientes de la población correccional. En esencia, el referido Manual se promulgó con el propósito de establecer un sistema uniforme para la preparación, manejo y transferencia de los expedientes de los miembros de la población correccional. Asimismo, dicho documento se creó con el fin de establecer normas claras sobre el acceso a la información contenida en los mencionados expedientes.

En lo aquí atinente, el inciso 4 de la Sección VI del Manual establece que, mientras el miembro de la población permanezca

encarcelado, el expediente criminal permanecerá en la oficina de récords, bajo la custodia de los técnicos de récords de la institución correccional donde se encuentre ubicada la persona confinada. **Estos expedientes criminales se consideran documentos públicos a los que puede tener acceso cualquier persona o funcionario, para un propósito legítimo, mediante solicitud al técnico de récord**. En particular, el expediente criminal contendrá toda la información relacionada con el historial delictivo de la persona confinada, sentencias u órdenes judiciales, informes y otra información relacionada.

Por el contrario, el inciso 7 de la Sección VI del Manual dispone que el expediente social y el de visitas estarán bajo la custodia de los técnicos de servicios sociopenales. Los referidos expedientes, al igual que el expediente médico, son confidenciales y solo un número limitado de personas, establecidas de antemano por ley o reglamento, tendrán acceso a los mismos. En ese sentido, el Manual afirma que se tomarán todas las medidas necesarias para evitar que el personal no autorizado y los miembros de la población correccional u otros, tengan acceso a estos expedientes.

Por otro lado, la Sección VII del Manual gobierna lo relacionado al acceso a los expedientes de la población correccional. En específico, dicha sección dispone que los miembros de la población correccional tendrán acceso a la información en sus expedientes por conducto de su técnico de servicios sociopenales. Ahora bien, aclara que el expediente social será suministrado directamente por el técnico sociopenal, mientras que **en el caso del expediente criminal el técnico sociopenal hará las gestiones con el técnico de récord**. De otro lado, cuando un miembro de la población correccional interese que otra persona tenga acceso a la información que obra en su expediente social o en su expediente criminal, deberá hacerlo constar previamente por escrito y

certificarlo con su firma mediante el *Formulario de Consentimiento para Brindar Información.* Lo anterior es de aplicación aun en el caso de representantes legales, familiares o relacionados del miembro de la población correccional.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

En el presente recurso, la parte recurrente plantea como primer señalamiento de error que el DCR incidió al permitir que el remedio administrativo fuera contestado por el teniente comandante de la guardia cuando debió ser atendido por el área de sociales o récord. Como segundo señalamiento de error, sostiene que el DCR erró al permitir que dicho funcionario le notificara que tenía que recurrir ante el tribunal para tener acceso a sus expedientes. Por estar relacionados entre sí, los discutiremos en conjunto.

En el caso de autos, la parte recurrente solicitó la revisión judicial de la *Respuesta al Miembro de la Población Correccional* emitida el 18 de noviembre de 2024, en atención a la *Solicitud de Remedio Administrativo* instada por el recurrente el 26 de septiembre de 2024, mediante la cual solicitó acceso a sus expedientes. Dicha respuesta, en efecto, fue efectuada por el área de comandancia, en lugar de ser atendida por el área social y de récord, ya que estas son las áreas concernidas, según dispuesto en el *Manual de Normas y Procedimientos A.C. OA-SS-99, Manejo de Expedientes de la Población Correccional* (Manual). Ahora bien, la referida determinación fue modificada el 19 de diciembre de 2024 para incluir las expresiones del área social. Por lo tanto, la agencia rectificó su proceder y una de las áreas concernidas contestó la solicitud presentada por el recurrente. En conclusión, los referidos errores no se cometieron.

Por otro lado, la parte recurrente alega que el DCR incidió al solicitarle que cumpla con requisitos que no están contemplados en el precitado Manual. Ello, en violación a lo reglamentado por la agencia recurrida. En particular, el recurrente aduce que el DCR continúa en la negativa de permitirle tener acceso a su expediente criminal y social. Según argumenta, el organismo administrativo le requiere que haga referencia a los documentos específicos, pero el Manual no exige tal particularidad.

Por su parte, la recurrida sostiene que toda solicitud de documentos de los expedientes criminales y sociales de las personas confinadas debe ser canalizada a través de los técnicos de servicios sociopenales, tal y como resolvió la agencia, por lo que la determinación que nos ocupa cumplía con las disposiciones del Manual. Reiteró que la solicitud del recurrente de tener acceso a su expediente criminal únicamente puede ser canalizada por la técnica de servicios sociopenales. Indica que el recurrente no ha especificado cuáles son los documentos contenidos en su expediente criminal que este interesa obtener copia. Arguye que el recurrente se ha limitado a alegar, de forma generalizada, que desea tener acceso al expediente, pero este no se le ha negado, sino que se le orientó sobre el requisito de canalizar su solicitud a través de la mencionada técnica.

En apoyo a su contención, la parte recurrida adjuntó una *Certificación* emitida por la especialista de la División de Remedios Administrativos del DCR. En lo aquí atinente, la referida especialista expresó lo siguiente:

> El expediente criminal se compone de documentos legales (autos de prisión, sentencias, mociones, ect *[sic]*), Hojas [de] Control Sobre Liquidación de Sentencia, Notificación Sobre Cambio [de] Fecha de Cumplimiento, hojas de incidentes (anotaciones de los técnicos de récord en cuanto [a la] entrada y salida de los expedientes y acuerdos del Comité de Clasificación y Tratamiento). Aunque no se le da copia de las hojas de incidentes[,] los acuerdos tomados se le entregan al

miembro de la población correccional en la Minuta del Comité de Clasificación y Tratamiento para su evidencia y archivo personal.

Básicamente[,] al miembro de la población correccional se le [da] copia de los documentos que obran en el expediente criminal. [D]e necesitar algún documento que obre en su expediente[,] debe dialogarlo con el área de récord criminal. Si son sentencias[,] puede solicitarlas a través de moción al Tribunal de Primera Instancia. Si la solicitud es revisar el expediente[,] el Técnico Sociopenal le asistirá en ese proceso.

Puntualizamos que el Sr. Luis H. Quiñones Santiago ha solicitado al Área de Récord Criminal copia de documentos, pero no ha sido espec[í]fico [en] cu[á]l es [el] documento que requiere.

Estamos a la mayor disposición de servir de facilitadores para ayudar al miembro de la población correccional a entregarle los documentos que necesite y de los cuales no obre su entrega en los expedientes.

De forma contradictoria, luego de sostener que era únicamente mediante la técnica sociopenal que el recurrente podía solicitar los documentos que obran en su expediente criminal, la parte recurrida reprodujo lo expresado por la precitada especialista y, de esa manera, informó que el recurrente debía solicitar dicha información al área de récord criminal, tal y como resolvió la agencia mediante el dictamen recurrido. Asimismo, señaló que, si el recurrente interesaba obtener copia de sentencias judiciales, podía solicitarlo ante el foro primario a través de una moción a esos efectos, mientras que, si solicitaba revisar el expediente, correspondía solicitarlo a su técnico de servicios sociopenales para que le asista en ese proceso.

Sin embargo, lo anterior no fue lo que resolvió el organismo administrativo en el dictamen recurrido. A simple vista, tanto las expresiones de la especialista en la precitada *Certificación,* como los planteamientos de la parte recurrida, son contradictorios y no van a la par con lo resuelto por el DCR, ni con lo dispuesto en el Manual en cuestión. Veamos.

Según esbozamos, el Manual se creó, entre otras razones, con el fin de establecer normas claras sobre el acceso a la información contenida en los expedientes de los miembros de la población correccional. En particular, los expedientes criminales se consideran documentos públicos a los que puede tener acceso cualquier persona o funcionario, para un propósito legítimo, mediante solicitud al técnico de récord. Por el contrario, el expediente social es confidencial y solo un número limitado de personas, establecidas de antemano por ley o reglamento, tendrán acceso a este. Por otro lado, el Manual dispone que los miembros de la población correccional tendrán acceso a la información en sus expedientes por conducto de su técnico de servicios sociopenales. En específico, el expediente social será suministrado directamente por el técnico sociopenal, mientras que en el caso del expediente criminal el técnico sociopenal hará las gestiones con el técnico de récord.

De lo anterior surge expresamente que: (1) el expediente criminal es público y, por tanto, el miembro de la población correccional tiene derecho a verlo por conducto del técnico sociopenal, quien debe solicitarlo al técnico de récord; (2) el expediente social es confidencial y el miembro de la población correccional solo podrá tener acceso a este a través del técnico sociopenal. En otras palabras, el Manual nada dispone sobre la necesidad de acudir ante el Tribunal de Primera Instancia para tener acceso a las sentencias, pues estas están contenidas en el expediente criminal que el DCR tiene en su custodia. El Manual tampoco requiere que el miembro de la población correccional especifique cuáles son los documentos o la información contenida en su expediente que quiere revisar. Igualmente, el Manual tampoco le exige al miembro de la población a que acuda directamente al área de récord para tener acceso a su expediente criminal, pues esta

gestión es responsabilidad del técnico sociopenal, según claramente dispone el Manual.

En la *Respuesta de Reconsideración al Miembro de la Población Correccional* que nos ocupa, la agencia recurrida expresó que el recurrente interesaba que el área social y de récord cumplieran con lo establecido en el Manual. En el referido dictamen, el organismo administrativo erróneamente le informó al recurrente que no podía ver el expediente criminal, aun cuando el Manual expresamente dispone que dicho expediente es público y cualquier persona puede tener acceso a la información allí contenida, para un propósito legítimo. Si bien la agencia señaló que el recurrente podía tener acceso a dicho expediente por conducto de un técnico de servicios sociopenales, le orientó incorrectamente que se tenía que reunir con la técnica de servicios sociopenales de la institución en la que se encontraba para que aclarara sus inquietudes, ya que no había especificado en su *Solicitud de Remedio Administrativo* cuáles eran los documentos que no se le habían proporcionado.

Sin embargo, el organismo administrativo obvió por completo la alegación del recurrente en su *Solicitud de Remedio Administrativo* de que ya había solicitado ver su expediente social y criminal, tanto a la técnica sociopenal Diana L. Soto y la técnica de récord Burgos, como a la supervisora Linette González, pero estas le negaron el acceso porque, según le indicaron, ello no se podía. En virtud de lo anterior, el recurrente solicitó que se cumpliera con lo dispuesto en el Manual. Por su parte, el DCR no hizo constar en su dictamen que el recurrente había acudido oportunamente a los canales correspondientes, según establece el Manual, pero su petitorio presuntamente le fue denegado. Según arguye la parte recurrida, ello se debe a que el recurrente no especificó la información que quería obtener de los expedientes. No obstante, el Manual le permite al recurrente ver su expediente criminal y social por conducto del

técnico sociopenal, sin que este tenga que especificar qué información está buscando. Ahora bien, si el recurrente quiere copia de documentos contenidos en el expediente criminal y social, tendrá que especificar cuáles son luego de ver el expediente e identificarlos para que el funcionario a cargo le entregue las copias que necesite.

En virtud de lo anterior, colegimos que la agencia recurrida erró al aplicar la ley cuando denegó la *Solicitud de Remedio Administrativo* instada por el recurrente. Tal actuación por parte del organismo administrativo resulta ser arbitraria e irrazonable, por lo que amerita nuestra intervención. Consecuentemente, resulta forzoso concluir que, en lugar de denegar la petición del recurrente, procedía que la agencia la acogiera. Es decir, el DCR debía: (1) Ordenar a la técnica sociopenal de la institución a solicitar el expediente criminal del recurrente al área de récord; (2) Reunirse con el recurrente para que este tuviera acceso a la información contenida tanto en su expediente criminal como en el social; (3) Si luego de dicha revisión el recurrente necesitaba copia de alguno de los documentos allí contenidos, debía solicitarlo expresamente a la técnica sociopenal que lo acompañara para que esta se la proveyera. Ante la aplicación errónea del Manual en cuestión y la inacción de la agencia en permitir al recurrente tener acceso a su información, procede que revoquemos la determinación agencial recurrida.

**IV**

Por los fundamentos que anteceden, revocamos la determinación administrativa recurrida. En su consecuencia, devolvemos el caso al Departamento de Corrección y Rehabilitación para que actúe conforme a lo aquí resuelto.

Notifíquese a las partes, al Procurador General y a la Secretaria del Departamento de Corrección y Rehabilitación. La persona administradora de Corrección deberá entregar copia de esta

*Sentencia* al confinado, en cualquier institución donde este se encuentre.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones